1
2
3
4
5
6
7

8    IN THE UNITED STATES DISTRICT COURT

9    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MICHAEL ERB,

11          Petitioner,              No. 2:07-cv-2601 LKK KJN P

12   vs.

13   JAMES A. YATES, et al.,[1]       ORDER AND

14          Respondents.             FINDINGS AND RECOMMENDATIONS

15   _____/

16   I. Introduction

17          Petitioner is a state prisoner proceeding without counsel with an application for a

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his February 28, 2005

19   conviction on one count of securities fraud (Cal. Corp. Code §§ 25540, 24501), based on his

20   guilty plea.  (Clerk's Transcript ("CT") at 475.)  Petitioner also admitted two enhancements:

21   petitioner took property of a value exceeding $150,000.00 (Cal. Penal Code § 12022.6(a)(2), and

22   committed two or more related felonies, a material element of which was fraud or embezzlement,

23   involving the taking of more than $500,000.00 (Cal. Penal Code § 186.11(A)(2).)  Petitioner was

24   sentenced to seven years in prison on August 4, 2005.  Petitioner raises six claims in his petition,

25   _____

26          [1] James A. Yates is substituted as respondent herein.  See Rumsfeld v. Padilla, 542 U.S.
     426, 434-35 (2004).  The Clerk of Court will be directed to change the docket accordingly.

1

1  filed December 4, 2007, that his prison sentence violates the Constitution.

2       Petitioner has also filed motions for an evidentiary hearing, expansion of the

3  record and for summary judgment.  The court will address these pending motions following

4  ruling on the merits of the petition.

5  II.  Procedural History

6       On August 17, 2004, petitioner's counsel filed an appeal in the Court of Appeal

7  for the State of California, Third Appellate District.  (Resp't's Supplemental Lodged Document

8  ("Supp. LD") 7.)  The People filed a motion to dismiss the appeal based on petitioner's failure to

9  obtain a certificate of probable cause.  (Supp. LD 8.)  There was subsequent briefing on the

10  motion.  (Supp. LD, 9-11.) While the motion was pending, both parties filed briefing on the

11  merits.  (Supp. LD 12-13.)

12       On December 8, 2006, petitioner's appeal was dismissed as barred due to

13  petitioner's failure to obtain a certificate of probable cause in the trial court.  (Resp't's Lodged

14  Documents ("LD") 1.)

15       On September 18, 2006, petitioner, proceeding without counsel, filed a petition

16  for writ of habeas corpus in the California Court of Appeal, Third Appellate District, Case No.

17  C053648.  (Supp. LD 14.)  On September 28, 2006, the petition was summarily denied without

18  comment or citation.  (Supp. LD 15.)

19       On January 17, 2007, petitioner's counsel filed a petition for review of the order

20  dismissing petitioner's appeal in the California Supreme Court, Case No. S149532.  (LD 2.)

21  Petitioner, proceeding without counsel, filed a petition for review in the California Supreme

22  Court on January 17, 2007, also in Case No. S149532.  (LD 3.)  The California Supreme Court

23  denied both petitions on March 21, 2007, without comment or citation.  (LD 4.)

24       On December 4, 2007, petitioner, proceeding without counsel, filed a petition for

25  writ of habeas corpus in the instant action.  (Dkt. No. 1.)  On March 3, 2008, petitioner filed an

26  amended petition.  (Dkt. No. 10.)  On April 9, 2008, respondent was directed to file an answer or

2

1  motion in response.  (Dkt. No. 15.)  On August 8, 2008, respondent filed a motion to dismiss the

2  amended petition for failure to exhaust state court remedies.  (Dkt. No. 20.)

3         On September 18, 2008, petitioner, proceeding without counsel, filed a petition

4  for writ of habeas corpus in the California Supreme Court.   (Dkt. No. 27.)  On October 22, 2008,

5  the California Supreme Court summarily denied the petition without comment or citation.  (Dkt.

6  No. 33 at 5.)  Thereafter, the court found petitioner had exhausted his state court remedies and

7  denied the motion to dismiss.  (Dkt. Nos. 38, 41.)  Respondent filed an answer on July 10, 2009,

8  and petitioner filed a traverse on  October 13, 2009.  (Dkt. Nos. 46, 50.)

9         Respondent concedes petitioner has exhausted his state remedies as to each claim

10 raised herein.  (Dkt. Nos. 21, 31, 35, 41 & 46.)

11 III.  Background and Facts

12        Petitioner was initially charged in Calaveras County Superior Court on or about

13 November 17, 2004.  (Dkt. No. 2 at 6.)  On or about February 3, 2005,[2] a felony amended

14 complaint was filed in the Calaveras County Superior Court charging petitioner with conspiracy

15 to commit grand theft and securities fraud (Cal. Penal Code §§ 182(a)(1), 487; Cal. Corp. Code

16 §§ 25540, 25401) (count 1); nine counts of securities fraud (Cal. Corp. Code §§ 25540, 25401)

17 (counts 2, 5, 8, 11, 14, 17, 20, 22, 24); seven counts of residential burglary (Cal. Penal Code

18 § 459) (counts 3, 6, 9, 12, 15, 18, 21); and eight counts of grand theft (Cal. Penal Code § 487)

19 (counts 4, 7, 10, 13, 16, 19, 23, 25).  (CT 63-74.)

20        On February 3, 2005, petitioner was also charged by felony complaint in San

21 Joaquin County Superior Court with ten counts of securities fraud (Corp. Code, § 25401/25540)

22 (counts 1, 3, 5, 7, 9, 11, 12, 14, 16, 18), seven counts of residential burglary (Pen. Code, § 459)

23 (counts 2, 4, 6, 8, 10, 13, 15), and one count of grand theft (Pen. Code, § 487) (count 17).  (CT 1-

24

25        [2]  The felony first amended complaint provided in the Clerk's Transcript does not bear a
   file stamp from the Calaveras County Superior Court.  However, the document was signed and
   dated February 3, 2005, by Robert M. Morgester, Deputy Attorney General for the State of
26 California.

4.)  The information also alleged the following enhancements:  (1) petitioner took property of a value exceeding $150,000.00, within the meaning of Penal Code section 12022.6, subdivision (a)(2); (2) that, pursuant to Penal Code § 186.11(a)(2), the offenses set forth in counts 1-25 were related to felonies, a material element of which is fraud and embezzlement, which involves a pattern of related felony conduct which involves the taking of more than $500,000.00; and (3) pursuant to Penal Code § 667.9(a), the offenses in counts 2, 4, 6, 8, 10, 13 and 15 were committed against a person who was 65 years of age or older and such disability and condition was known and reasonably should have been known to petitioner.  (CT 5.)

On February 28, 2005, pursuant to a negotiated disposition, [petitioner] pled guilty to a single count (count eleven) of securities fraud (Corp. Code, § 25401/25540).  In addition, he admitted the two enhancements.  ([Cal. Penal Code] §§ 186.11, subd. (a)(2); 12022.6, subd. (a)(2).)  Because the white collar criminal enhancement only applies to a person who has been convicted of two felonies, and because [petitioner] was convicted of only one, he waived the two-felony requirements.  (RT 16.)  In exchange for his plea, [petitioner] was promised either six or eight years in prison.  (RT 2-3.)

On August 4, 2005, the trial court sentenced [petitioner] to seven years in prison.  (RT 69-70.)  The court imposed the mid-term (three years) for count eleven, the low-term (two years) for the white collar criminal enhancement, and the fixed term of two years for the [Cal. Penal Code] section 12022.6(a)(2) enhancement.  (RT 70-71; CT 462, 464, 475.)

[Petitioner] filed a timely notice of appeal on August 17, 2004. (CT 481.)  [Petitioner] requested a certificate of probable cause, which the trial court denied.  (CT 481-482.)

STATEMENT OF FACTS

According to the probation report, [petitioner] sold notes to investors that were secured by pieces of property he intended to develop.  Eventually, the interest payments on the notes ceased. An investigation revealed that [petitioner] used investor funds to pay off other investors and for his personal benefit.  In addition, he failed to take "sufficient steps" to develop the properties.  It was also discovered that the investors would not be able to recoup their losses based on the properties used as security.  (CT 319.)

People v. Erb, No. C050865, Third District Court of Appeal, Opening Brief, filed April 6, 2006,

1   at 1-3.  (Supp. LD 7.)[3]

2          On February 28, 2005, the case came on for bail review and further arraignment;

3   both petitioner and his counsel were present.  (CT 206.)  As noted above, the parties arrived at

4   the following plea agreement:  petitioner would plead guilty to count eleven of the February 3,

5   2005 complaint, admit the § 12022.6(as)(2) and 186.11(a)(2) enhancements, and waive any

6   requirement that the 186.11(a)(2) enhancement has to have two felony convictions, and agree

7   that the term can be imposed upon one felony conviction.  (RT 2.)  Petitioner agreed to be

8   sentenced to an aggregate term of six[4] or eight[5] years, depending on whether the low or middle

9   term of imprisonment was imposed for securities fraud.  (RT 2.)  In exchange for that plea, the

10  other counts in the San Joaquin County case and all of the counts in the Calaveras County case

11  would be dismissed.  (RT 3, 11.)  In addition, petitioner agreed to cooperate with the disposition

12  of property listed on the lis pendens filed by the Deputy Attorney General.  (RT 11.)

13         The prosecution offered the following factual basis for the plea:

14            The date in question, within the County of San Joaquin, in
          reference to the alleged victim, the [petitioner] sold a security and
15        in selling the security made an omission; specifically he did not tell
          the victim in this particular count that he had prior business
16        dealings that went bad.  Additionally, he did not tell the victim in
          this particular count that he owed the State of California
17        approximately $600,000 in unpaid taxes.

18            In total, the amount of securities that were sold exceeded half a
          million dollars, and there was more than two sales that were
19        conducted.

20

21         [3]  Because there is no reasoned state court opinion, some of these facts have been drawn
    from petitioner's opening brief filed in the Third District Court of Appeal on April 6, 2006.
22  (Supp. LD 7 at 1.)

23         [4]  The judge explained that the six year term was based upon the low term of two years on
    count eleven, the fixed term of two years on the § 12022.6(a)(2) enhancement, and the low term
24  on the § 186.11(a)(2) enhancement of two years, for a total of six years.  (RT 2-3.)

25         [5]  The eight year term was explained as a mid term sentence on count eleven of three
    years, two years on the § 12022.6(a)(2) enhancement, and the mid term on the § 186.11(a)(2)
26  enhancement of three years, for a total of eight years.  (RT 3.)

1   (LD 18 at 14.)  The prosecution referred to the date of "[o]n or about November 21, 2001."  (CT

2   3.)  Petitioner's counsel conferred with petitioner and stipulated to the factual basis.  (Id. at 15.)

3   IV.   Standards for a Writ of Habeas Corpus

4         A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

5   some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

6   861 (9th Cir. 1994); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citation omitted)

7   A federal writ is not available for alleged error in the interpretation or application of state law.

8   See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th

9   Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be used to try state issues de

10  novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

11        This action is governed by the Antiterrorism and Effective Death Penalty Act of

12  1996 ("AEDPA").  See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

13  1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

14  habeas corpus relief:

15          An application for a writ of habeas corpus on behalf of a person
        in custody pursuant to the judgment of a State court shall not be
16       granted with respect to any claim that was adjudicated on the
        merits in State court proceedings unless the adjudication of the
17       claim -

18              (1) resulted in a decision that was contrary to, or involved
        an unreasonable application of, clearly established Federal law, as
19       determined by the Supreme Court of the United States; or

20              (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
21       State court proceeding.

22  28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

23  Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

24        Under section 2254(d)(1), a state court decision is "contrary to" clearly

25  established United States Supreme Court precedents if it applies a rule that contradicts the

26  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

6

1   indistinguishable from a decision of the Supreme Court and nevertheless arrives at different

2   result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citation omitted).

3          Under the "unreasonable application" clause of section 2254(d)(1), a federal

4   habeas court may grant the writ if the state court identifies the correct governing legal principle

5   from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

6   prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

7   simply because that court concludes in its independent judgment that the relevant state-court

8   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

9   application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

10  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

11  question, is left with a 'firm conviction' that the state court was 'erroneous.'")

12         The court looks to the last reasoned state court decision as the basis for the state

13  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where, as here, the

14  state court reaches a decision on the merits but provides no reasoning to support its conclusion, a

15  federal habeas court independently reviews the record to determine whether habeas corpus relief

16  is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

17  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) ("Independent review of the record is not de

18  novo review of the constitutional issue, but rather, the only method by which we can determine

19  whether a silent state court decision is objectively unreasonable."); accord Pirtle v. Morgan, 313

20  F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached the merits of

21  a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential

22  standard does not apply and a federal habeas court must review the claim de novo.  Nulph v.

23  Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle, 313 F.3d at 1167.

24  ////

25  ////

26  ////

V.  Petitioner's Claims

A.  Ineffective Assistance of Counsel/Involuntary or Coerced Guilty Plea[6]

Petitioner's first and third claims assert that his trial attorney rendered ineffective assistance by failing to get petitioner released on bondable bail, refusing to file a demurrer, failing to file a motion to suppress, and coercing petitioner to accept a guilty plea.

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Id. at 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  Strickland, 466 U.S. at 697.

In assessing an ineffective assistance of counsel claim "[t]here is a strong

---

[6]  Petitioner's first three claims are related and are thus analyzed together in this first section.

presumption that counsel's performance falls within the wide range of professional assistance." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citation omitted).  Additionally, there is a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citation omitted).

All of the instances of ineffective assistance of trial counsel alleged by petitioner occurred prior to the entry of petitioner's plea of guilty to the charges against him.  The law is clear that petitioner may not raise claims of deprivation of his constitutional rights that occurred prior to his plea.  "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  Tollett v. Henderson, 411 U.S. 258, 267 (1973).  See also McMann v. Richardson, 397 U.S. 759, 770-71 (1970); Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994) ("As a general rule, one who voluntarily pleads guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations"), overruled on other grounds in Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); Hudson v. Moran, 760 F.2d 1027, 1029-30 (9th Cir. 1985) (superseded on other grounds by AEDPA) (voluntary and intelligent guilty plea precludes federal habeas relief based upon "independent claims" of pre-plea constitutional violations).  Under these circumstances, a prisoner may attack only the voluntary and intelligent character of his guilty plea in habeas proceedings.  Ortberg v. Moody, 961 F.2d 135, 137 (9th Cir. 1992).  To the extent that a petitioner seeks to claim that he received ineffective assistance of counsel premised on his attorney's allegedly faulty advice, he may do so only based upon that advice as it related to the decision to enter his guilty plea.  Any ineffective assistance claims relating to other, earlier actions by his counsel are barred by the holding in Tollett v. Henderson, supra.  See Moran, 57 F.3d at 700.

Accordingly, petitioner's claims regarding trial counsel's failure to file a demurrer, failure to file a motion to suppress (ground three), and failure to object to prosecutorial

misconduct (Traverse at 10), are all claims arising prior to the entry of plea that do not implicate the voluntariness of petitioner's plea of guilty and have therefore been waived by petitioner when he entered his guilty plea.  <u>Tollett</u>, 411 U.S. at 267.

Petitioner also attacks the voluntary and intelligent character of his guilty plea by alleging that the trial court and defense counsel coerced the guilty plea by the fact that petitioner was held in custody for twenty days without bondable bail (Amended Petition ("AP") at 19), and because defense counsel "said he thought petitioner could get probation only if [he] pled guilty and sold all [his] real estate and give the proceeds to the court."  (AP at 20.)

To prevail on such claims, a petitioner must show that:  (1) counsel's representation fell below the range of competence demanded of attorneys in criminal cases, and (2) "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  <u>Hill v. Lockhart</u>, 474 U.S. 52, 56 (1985).  As explained in <u>Hill</u>,

> where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

474 U.S. at 59.  Petitioner has failed to make the required showing.

Petitioner's unsubstantiated allegations are insufficient to establish either deficient performance by counsel or prejudice.  Petitioner has failed to demonstrate or argue that absent defense counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial.

Petitioner's allegations also fail to demonstrate that even if counsel had taken the actions suggested by petitioner, it would have led counsel to change his recommendation as to the plea or would have changed the outcome of a trial.  In light of these failures, petitioner cannot

demonstrate that counsel's advice to plead guilty in exchange for a reduced sentence was unreasonable or that petitioner's plea was involuntary.  Although petitioner implies that counsel's purportedly deficient performance, in general, contributed to his decision to enter a plea, these allegations fall far short of establishing that his trial counsel's allegedly erroneous advice contributed to petitioner's entry of an involuntary and unknowing guilty plea.

Petitioner was facing a possible sentence of twenty-one years in prison.  (RT 65-66.)  Pursuant to his plea agreement, multiple charges against petitioner were dropped and petitioner was sentenced within the stipulated term of six to eight years in state prison.  In light of the benefit to petitioner resulting from his plea and the stipulated-to sentence, counsel's advice to petitioner that he should accept the plea offer was certainly not below an objective standard of reasonableness.  Further, given this benefit, petitioner has not established that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.

In addition, this court has reviewed the transcript of petitioner's change of plea hearing and concludes that his guilty plea was freely and voluntarily made, with full knowledge of the consequences thereof.  In this regard, a guilty plea must be knowing, intelligent and voluntary.  Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969).  "The voluntariness of [a petitioner's] guilty plea can be determined only by considering all of the relevant circumstances surrounding it."  Brady, 397 F.2d at 749.  In Blackledge v. Allison, 431 U.S. 63 (1977), the Supreme Court addressed the presumption of verity to be given the record of plea proceeding when the plea is subsequently subject to a collateral challenge.  While noting that a defendant's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the Supreme Court stated that, nonetheless, the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity."  Id. at 74; see also Marshall v. Lonberger, 459 U.S. 422, 437 (1983) (plea presumed valid in

1  habeas proceeding when pleading defendant was represented by counsel); Little v. Crawford, 449

2  F.3d 1075, 1081 (9th Cir. 2006); Chizen v. Hunter, 809 F.2d 560, 561 (9th Cir. 1986).

3           In Boykin, the United States Supreme Court held that the record must

4  affirmatively show that a criminal defendant's guilty plea is intelligent and voluntary.  Boykin,

5  395 U.S. at 242-43.  In Boykin, the judge taking the plea had asked no questions of petitioner

6  concerning his guilty plea and petitioner did not address the court.  The Supreme Court

7  concluded the record must reflect that a criminal defendant pleading guilty understands, and is

8  voluntarily waiving, his rights to the privilege against compulsory self-incrimination, to trial by

9  jury and to confront one's accusers, and that the court could not presume such a waiver from a

10  silent record.  Id,  The court in Brady, citing Boykin, upheld a guilty plea as voluntary and

11  intelligent even though the defendant had not been specifically advised of the three rights

12  discussed in Boykin.  The court in Brady clarified the holding of Boykin by stating, "the new

13  element added in Boykin was the requirement that the record must affirmatively disclose that a

14  defendant who pleaded guilty entered his plea understandingly and voluntarily."  Brady, 397 U.S.

15  at 747-48 n.4.  Thus, specific articulation of the Boykin rights "is not the sine qua non of a valid

16  guilty plea."  Wilkins v. Erickson, 505 F.2d 761, 763 (9th Cir. 1974).  Rather, if the record

17  demonstrates that a guilty plea is knowing and voluntary, "no particular ritual or showing on the

18  record is required."  United States v. McWilliams, 730 F.2d 1218, 1223 (9th Cir. 1984).  Finally,

19  the Due Process Clause does not impose on a state court the duty to establish a factual basis for a

20  guilty plea absent special circumstances, such as "a specific protestation of innocence."

21  Rodriguez v. Ricketts, 777 F.2d 527, 528 (9th Cir. 1985).

22           Here, there was a full and complete colloquy between the court and petitioner at

23  the time he entered his plea.  (RT 4-16.)  After the judge explained the terms of the plea

24  agreement, he asked petitioner whether he understood, and petitioner responded, "Yes."  (RT 4.)

25  Petitioner answered each of the judge's questions affirmatively and stated he understood (RT 4-

26  11), with the exception of the following exchange:

1    THE COURT: Okay. Has anybody made any threats or promises
     to you today to get you to enter a plea and to admit the
2    enhancements other than what we've put on the record, that you're
     going to admit – or you'll plead to count one, two enhancements,
3    it's going to be a six- or eight-year term, and all of the counts in
     Calaveras County will be dismissed with Harvey waivers after you
4    are sentenced on this particular case.

5    Do you understand that?

6    (RT 11.) At that point in the proceeding , there is no indication of a response by petitioner;

7    rather, defense counsel interrupted to clarify that the additional counts in San Joaquin County

8    would also be dismissed, and that the People would not bring any additional charges. (RT 11.)

9    After clarification, there was an unreported discussion between petitioner and defense counsel.

10   (RT 12.) The court went on to discuss the agreement regarding the lis pendens, to which the

11   petitioner affirmatively agreed. (RT 13.) Following discussion with defense counsel, petitioner

12   stipulated to the factual basis supporting the plea. (RT 15.) At that point, the court found

13   petitioner understood the charge and the consequences of the plea, and found that the plea was

14   free and voluntary. (RT 15.) Petitioner then pled guilty. (Id.)

15   Moreover, during sentencing, the court stated:

16   I think you were competently advised. [¶]  Let me tell you this, I
     think your counsel has been extremely competent in what he's
17   done. And I think he negotiated a real good deal for you, because
     you were looking at 21 years and in excess of three strikes.
18   (RT 65-66.)

19   After a review of the record in this case, the undersigned concludes that

20   petitioner's plea of guilty was voluntarily made, with knowledge of the consequences thereof,

21   and that petitioner was not coerced into entering a guilty plea.

22   Petitioner contends that the trial court and defense counsel coerced the guilty plea

23   by the fact he was held in custody for twenty days without bondable bail. (AP at 19.) Petitioner

24   claims that on February 23, 2005, he was brought to court, and the judge immediately called

25   defense counsel and the prosecutor into the judge's chambers (without petitioner). (AP at 19.)

26   When they emerged, the judge required petitioner to meet with defense counsel in the back room

of the court, where petitioner refused to plead guilty at least 10 more times.  (AP at 20.)

Petitioner also claims that

> 3. On or about 2/25/05, 2/26/05 and 2/27/05 (Sunday) Defense Counsel visited the San Joaquin County Jail and repeatedly asked and vehemently insisted that petitioner should plead guilty at least 20 times in those 3 days.  Petitioner said "No – I will not plead guilty to something I am not guilty of" for those 3 days .
>
> 4. On or about 2/25/05, David Jedell, a friend of petitioner, and New York Attorney working with defense counsel on behalf of petitioner (pro hac vice) came to the San Joaquin County Jail. Jedell said that the defense counsel was very adamant about petitioner pleading guilty.  Jedell said defense counsel actually got very upset and chastised Jedell for saying petitioner may continue to state "not guilty" to defense counsel. . . .
>
> 5. On the final day before going back to court, on 2/27/05, defense counsel said he thought petitioner could get probation only if I pled guilty and sold all my real estate and give the proceeds to the court.

(AP at 20.)  However, petitioner has failed to demonstrate how these actions coerced him to plead guilty, particularly in light of the charges pending against him.  Moreover, petitioner has failed to demonstrate that the in-chambers conferences were no more than routine plea bargaining efforts made in a complex case.

The record reflects that petitioner made a voluntary and intelligent choice to plead guilty to the reduced charges against him.  He voluntarily waived his rights to a jury trial, to confront his accusers and his right against self-incrimination.  See Boykin, 395 U.S. at 243. Further, petitioner had notice of the nature of the charges against him.  See Lonberger, 459 U.S. at 436 (in order for a plea to be voluntary, an accused must receive notice of the nature of the charge against him, "the first and most universally recognized requirement of due process") (citation omitted).  This is sufficient for purposes of federal review.  Lonberger, 459 U.S. at 436.

Aside from petitioner's unsupported allegations, there is no evidence that petitioner was threatened in any way in order to induce him to enter into the plea agreement.  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (citation omitted).  Petitioner has failed to demonstrate any special circumstances, such as a protestation of innocence at the plea hearing,

14

1   that would allow for habeas relief under section 2254.  See Rodriguez, 777 F.2d at 528.  Indeed,

2   petitioner failed to speak up when the court asked him whether any threats or promises had

3   caused him to plead guilty.  (RT 11.)  During the plea colloquy, petitioner also failed to mention

4   any alleged duress or coercion.  The record reflects there were numerous opportunities petitioner

5   could have advised the court he felt pressured or coerced into pleading guilty.  There were

6   several occasions where the record reflects there was unrecorded discussion between defense

7   counsel and petitioner.  (RT 5, 6, 7, 9, 10, 12, 13, 15, 16, 18.)  Petitioner now claims that during

8   these pauses in sentencing, petitioner would ask questions and defense counsel would say "just

9   say yes and I'll explain later."  (AP at 21.)  However, the record reflects the court was taking its

10  time with petitioner, ensuring his plea was voluntary, yet petitioner failed to raise any of his

11  questions or concerns to the court during the hearing.

12          In addition, during the sentencing hearing, the judge noted having received letters

13  of support for petitioner which were "begging [him] for probation."  (RT 63.)  The judge said

14  that review of the probation report and petitioner's statement suggested petitioner was "almost

15  trying to place [himself] as being a victim in this."  (Id.)  The judge reminded petitioner that

16  when the plea was negotiated, petitioner "fully agreed that [he] knew [his] sentence was going to

17  be six years, seven years, or eight years."  (Id.)  Petitioner explained he had hoped his efforts to

18  obtain restitution would have served as mitigation to obtain a lesser sentence.  (RT 63-64.)

19  Petitioner did acknowledge, however, that he had agreed to a sentence of six to eight years.  (RT

20  64.)  At no time during any hearing did petitioner inform the court that he felt pressured or

21  coerced into pleading guilty.

22          As noted by respondent, petitioner has failed to demonstrate defense counsel or

23  the trial judge coerced his plea; rather, the record reflects petitioner was strongly encouraged to

24  accept the plea in light of the forty-three charges, two trials, multiple victims, and a possible

25  ////

26  ////

twenty year prison sentence.[7]  Moreover, during the sentencing hearing, petitioner admitted he

"fully did this early plea so that the Court would not have to have a lot of drama and time spent

on the transactions."  (RT 65.)  Indeed, in his traverse, petitioner stated defense counsel "wanted

and vehemently encouraged petitioner to plead guilty."  (Traverse at 11.)  Strenuous

recommendations and encouragement do not amount to coercion.

Petitioner also contends he was coerced into pleading guilty because defense

counsel "said he thought petitioner could get probation only if [he] pled guilty and sold all [his]

real estate and give the proceeds to the court."  (AP at 20.)  First, the wording of this statement is

not coercive.  Moreover, it is also refuted by the record at sentencing:

> THE COURT:  You understand, sir, that when we negotiated this "deal," you fully agreed that you knew your sentence was going to be six years, seven years, or eight years.

(CT 63.)

> THE COURT:  You knew when we sentenced you, there was no promises you would be released at the time of sentencing.  I don't want you coming back saying wait, I thought I would get released, that was the basis of the deal.  There was no promises to you that part of the plea agreement was that I would let you out.

> [PETITIONER]:  No, and that is what I want to thank the Court for.  At least I had the opportunity to go out and try to mitigate by paying people off.

(CT 66.)  Petitioner has failed to demonstrate coercion based on any alleged promise of

probation.

Finally, petitioner contends he was coerced into pleading guilty because the court

refused to follow the Calaveras County bail bond, to offer him bondable bail, or hold a bail

---

[7]  The trial judge suggested petitioner could have received even more than twenty years. "You took the deal because your exposure was in excess of 30 years . . . 21 years and in excess of three strikes." (RT 65-66.) "The bottom line to that means you – if you would have committed one felony for the rest of your natural life, you would have gotten life imprisonment.  That is how serious this stuff is.  ¶  I'm not saying that would have happened, but that is a factor the Court looks on the other side.  Sure, you came forward early because you got a good deal from your attorney early." (RT 66.)

1   hearing, demonstrating the court wanted petitioner held in custody to force him to plead guilty.

2   (AP at 17.)  These claims are also refuted by the record.

3            The record reflects that on February 3, 2005, the prosecution filed a motion to

4   raise bail and that "no bail be accepted until a hearing . . . to determine whether any portion of

5   the proffered bail was feloniously obtained." (CT 37.)  The prosecution based its motion, in part,

6   on the investigator's declaration stating that his investigation demonstrated petitioner had access

7   to large amounts of cash and assets allegedly gained through fraud.  (CT 40-41.)  The court set a

8   cash only bail in the amount of $79,600.00 on February 3, 2005, and required a hearing be held

9   before bail could be accepted.  (CT 43.)

10           On February 10, 2005, another hearing was held where petitioner appeared

11   without counsel.  (Dkt. No. 2, Ex. Part III, at 15-17.)  Petitioner asked the judge to drop the cash

12   bail requirement; the judge refused because he did not have time to review the papers.  (Id.)  The

13   judge continued the hearing based on a request by the prosecution as well as a request by an

14   attorney who might be retained by petitioner to represent him.  (Id.)

15           On February 16, 2005, petitioner's retained defense counsel filed a 50 page

16   motion to release petitioner on his own recognizance.  (CT 49-133.)  Defense counsel argued

17   that:  (1) the San Joaquin County complaint was subject to demurrer (CT 50-52; 54-55);

18   (2) petitioner was on $420,000.00 bondable bail from Calaveras County (CT 55); (3) petitioner

19   was not a danger to the community or a flight risk (CT 56-59); (4) the instant case was complex,

20   so pretrial incarceration would violate due process inasmuch as the incarceration could last as

21   long as the ultimate sentence (CT 59-60); and (5) petitioner's medical condition (he suffered

22   from diabetes) and his age warranted release (CT 60).

23           On February 23, 2005, the case came on for bail motion and further arraignment.

24   (CT 203.)  Bail remained at $79,600.00 cash only, and the hearing was continued to February 28,

25   2005.  (Id.)  The record does not reflect the reason for the continuance.  (Id.)

26           On February 28, 2005, petitioner pled guilty.  (CT 206-11; RT 15.)  Defense

17

counsel argued for petitioner's release on his own recognizance.  (RT 16-17.)  Petitioner was

ordered released on his own recognizance subject to certain terms and conditions.  (CT 206-11;

RT 17-19, 21.)  Petitioner was out of custody from February 28, 2005 until August 4, 2005, the

date he was sentenced.  (CT 462, 467; RT 22.)

At no time during the plea hearing or at sentencing did petitioner inform the court

that he had been forced to plead guilty because he had been held in custody for twenty days.  His

silence at sentencing is particularly telling since petitioner had been out of custody for over five

months yet failed to raise any claim of duress or coercion at sentencing.[8]

Accordingly, after an independent review of the record, and for all of the

foregoing reasons, the state court's rejection of petitioner's claims that he suffered ineffective

assistance of counsel, or that his plea of guilty was coerced or involuntary, were neither contrary

to, nor an unreasonable application of, controlling principles of United States Supreme Court

precedent.

B.  Challenge to California Corporations Code §§ 25540 & 25401

Petitioner's fourth claim is that the statutes under which he was convicted are

unconstitutional as applied to real estate mortgages.  (AP at 27-29.)  Specifically, he claims the

statutes are vague and overbroad.  Petitioner also claims defense counsel was ineffective because

he failed to raise this challenge.  (AP at 28-29.)

The state court denied petitioner's claim without comment.

As noted above, an independent review of the record is required to determine

whether the state court's decision was objectively unreasonable.  Himes, 336 F.3d at 848.

As previously described, petitioner pled guilty to one count of securities fraud

---

[8]  Petitioner also argues, in conclusory fashion, that defense counsel's failure to file a demurrer also coerced the guilty plea and demonstrates defense counsel "had no interest in having petitioner released."  (AP at 17.)  However, many of the facts supporting the demurrer were argued in the motion for petitioner's release on his own recognizance.  Moreover, the need for filing a demurrer was negated by the plea bargain entered early in the case, on February 28, 2005.  These facts fail to support a claim of coercion.

pursuant to California Corporations Code § 25401.  Section 25401 is part of the Corporate Securities Law of 1968.  Cal. Corp. Code §§ 25000 et seq.  California Corporations Code § 25401 provides:

> It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

Id.

The punishment for violation of § 25401, as well as other violations of the Corporate Securities Law of 1968, is found in California Corporations Code § 25540:

> (a)  Except as provided for in subdivision (b), any person who willfully violates any provision of this division, or who willfully violates any rule or order under this division, shall upon conviction be fined not more than one million dollars ($1,000,000), or imprisoned in the state prison, or in a county jail for not more than one year, or be punished by both that fine and imprisonment; but no person may be imprisoned for the violation of any rule or order if he or she proves that he or she had no knowledge of the rule or order.
>
> (b) Any person who willfully violates Section 25400, 25401, or 25402, or who willfully violates any rule or order under this division adopted pursuant to those provisions, shall upon conviction be fined not more than ten million dollars ($10,000,000), or imprisoned in the state prison for two, three, or five years, or be punished by both that fine and imprisonment.
>
> (c) Any issuer, as defined in Section 2 of the Sarbanes-Oxley Act of 2002 (Public Law 107-204), who willfully violates Section 25400, 25401, or 25402, or who willfully violates any rule or order under this division adopted pursuant to those provisions, shall upon conviction be fined not more than twenty-five million dollars ($25,000,000), or imprisoned in the state prison for two, three, or five years, or be punished by both that fine and imprisonment.

Cal. Corp. Code § 25540.

First, as stated above, because petitioner pled guilty, he has waived any claim of constitutional defect that does not relate directly to the knowing and voluntary nature of his plea. Tollett, 411 U.S. at 266-67.  Petitioner's claim that the statutes of conviction are vague and

19

1   overbroad or that defense counsel was ineffective by failing to raise this claim are barred.

2         Second, if the court reached the merits of this claim, the question would be

3   whether the state court's conclusion that the challenged statutes, California Corporations Code

4   §§ 25401 and 25540, are not impermissibly vague and overbroad, is contrary to or an

5   unreasonable application of federal law.

6         Assuming arguendo that petitioner has standing to raise this claim, he is still not

7   entitled to relief.  The United States Supreme Court has not held that these statutes are vague or

8   overbroad.  Accordingly, the opinion of the California Court of Appeal upholding the

9   constitutionality of these statutes is not contrary to or an unreasonable application of clearly

10  established federal law and may not be set aside.  28 U.S.C. § 2254(d)(1).  See Stevenson v.

11  Lewis, 2004 WL 2103362 (Cal. Sept. 22, 2004) (state court's decision not contrary to federal

12  where no United States Supreme Court precedent exists).[9]

13        The state court's rejection of petitioner's fourth claim for relief was neither

14  contrary to, nor an unreasonable application of, controlling principles of United States Supreme

15  Court precedent.  Petitioner's fourth claim for relief should be denied.

16               D.  Unconstitutional Sentence

17        Petitioner's fifth claim is that his prison sentence was unconstitutionally excessive

18  and exceeded the maximum sentence the legislature intended.  (AP at 22.)  Petitioner relies on

19  language that states, "no person may be imprisoned for the violation of any rule or order if he or

20  she proves that he or she had no knowledge of the rule or order."  (AP at 22, citing Cal. Corp.

21  Code § 25540.)  Petitioner declares he had "no knowledge of the rule or order in § 25540 prior to

22

23      [9] Petitioner appears to be under the misapprehension that because, as a real estate
    mortgage broker, he operated under the Business and Professions Code, he was not subject to the
24  California Corporate Securities Law of 1968.  Petitioner has provided no legal authority in
    support of this view.  As respondent points out, the purpose of this law is "to protect the public
    against the imposition of unsubstantial, unlawful and fraudulent stock and investment schemes
25  and the securities based thereon."  People v. Smith, 215 Cal. App.3d 230, 237 (1989).  The term
    "securities" is broadly defined and includes "any note. . . ; evidence of indebtedness; . . . or
26  participation in any profit-sharing agreement. . . ."  Cal. Corp. Code § 25019.

1   December 31, 2004." (Pet'r's Decl., AP at 23.)  Petitioner contends that when he pled guilty, he

2   believed he could not go to prison because of this provision.

3               Because there is no state court reasoned opinion, this court independently reviews

4   the record to determine whether the state court's decision was objectively unreasonable.  Himes,

5   336 F.3d at 848.  Despite the independent review, however, this court defers "to the state court's

6   ultimate conclusion." Pirtle, 313 F.3d at 1167.

7               As noted above, petitioner pled guilty to one count of securities fraud in violation

8   of California Corporations Code § 25401.  However, California Corporations Code § 25540 sets

9   out the penalties for violations of § 25401:

10              (a)  Except as provided for in subdivision (b), any person who
                willfully violates any provision of this division, or who willfully
11              violates any rule or order under this division, shall upon conviction
                be fined not more than one million dollars ($1,000,000), or
12              imprisoned in the state prison, or in a county jail for not more than
                one year, or be punished by both that fine and imprisonment; but
13              no person may be imprisoned for the violation of any rule or order
                if he or she proves that he or she had no knowledge of the rule or
14              order.

15              (b) Any person who willfully violates Section 25400, 25401, or
                25402, or who willfully violates any rule or order under this
16              division adopted pursuant to those provisions, shall upon
                conviction be fined not more than ten million dollars
17              ($10,000,000), or imprisoned in the state prison for two, three, or
                five years, or be punished by both that fine and imprisonment.
18
                (c) Any issuer, as defined in Section 2 of the Sarbanes-Oxley Act
19              of 2002 (Public Law 107-204), who willfully violates Section
                25400, 25401, or 25402, or who willfully violates any rule or order
20              under this division adopted pursuant to those provisions, shall upon
                conviction be fined not more than twenty-five million dollars
21              ($25,000,000), or imprisoned in the state prison for two, three, or
                five years, or be punished by both that fine and imprisonment.
22

23   Cal. Corp. Code § 25540.  The potential punishment under this statute was two, three or five

24   years in state prison.  The judge explained the potential punishment to petitioner at the plea

25   hearing.  (RT 2-3.)  As explained in detail above, petitioner faced additional punishment based

26   on the enhancements.  These potential punishments were also explained to petitioner at the plea

1    hearing.  (RT 3.)

2              Petitioner's claims of sentencing error are not cognizable in this federal habeas

3    corpus proceeding.  Habeas corpus relief is unavailable for alleged errors in the interpretation or

4    application of state sentencing laws by either a state trial court or a state appellate court.

5    Hendricks v. Zenon, 993 F.2d 664, 674 (9th Cir. 1993).  So long as a state sentence "is not based

6    on any proscribed federal grounds such as being cruel and unusual, racially or ethnically

7    motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of

8    state concern."  Makal v. State of Arizona, 544 F.2d 1030, 1035 (9th Cir. 1976).  The Ninth

9    Circuit has specifically refused to consider state law errors in the application of state sentencing

10   law.  See, e.g., Miller v. Vasquez, 868 F.2d 1116 (9th Cir. 1989).  In Miller, the court refused to

11   examine the state court's determination that a defendant's prior conviction was for a "serious

12   felony" within the meaning of the state statutes governing sentence enhancements.  Id. at 1118-

13   19.  The court did not reach the merits of the Miller petitioner's claim, stating that federal habeas

14   relief is not available for alleged errors in interpreting and applying state law.  Id. (quoting

15   Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985)).

16             In Estelle v. McGuire, 502 U.S. 62 (1991), the Supreme Court reiterated the

17   standard of review for a federal habeas court.  It held that "it is not the province of a federal

18   habeas court to reexamine state court determinations on state law questions."  Id. at 65.  The

19   court emphasized that "federal habeas corpus relief does not lie for error in state law."  Id. (citing

20   Lewis v. Jeffers, 497 U.S. 764 (1990), and Pulley v. Harris, 465 U.S. 37, 41 (1984)).  The court

21   further noted that the standard of review for a federal habeas court "is limited to deciding

22   whether a conviction violated the Constitution, laws, or treaties of the United States (citations

23   omitted)."  Estelle, 502 U.S. at 67.  Because petitioner has not shown that his sentence was

24   fundamentally unfair, this claim is not cognizable on federal review.  See Christian v. Rhode, 41

25   F.3d 461, 469 (9th Cir. 1994).

26             Petitioner's claims of sentencing error do not state a federal claim.  In addition,

after a careful review of the record of the sentencing proceedings, this court finds no federal constitutional error in connection with petitioner's sentence.  Petitioner's claim that he did not know he could be sentenced to prison under this statute is belied by the record.  Accordingly, this claim should be denied.

Petitioner also alleges defense counsel was ineffective for failing to present his declaration (AP at 23) to the court.  However, defense counsel cannot be deemed ineffective for failing to perform a futile act.  Defense counsel is not required to file a motion or make an objection that he knows to be meritless on the facts and the law.  See Wilson v. Henry, 185 F.3d 986, 990 (1999); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) (failure to take futile action is not deficient performance).  The instant record demonstrates petitioner was appropriately sentenced; therefore this claim must also fail.

E.  Judicial Bias

Petitioner's sixth claim is that three San Joaquin Superior Court judges were biased and prejudiced against petitioner.  (AP at 6; 24-27.)  Petitioner alleges this conclusion is evidenced by the following:  (1) during an in-chambers conference with defense counsel, the judge suggested to defense counsel that petitioner plead guilty to save the court time and money; (2) the judge refused to recognize an existing $420,000.00 bail bond in the Calaveras County case and remanded petitioner to custody with a cash bail requirement; (3) the judge refused to allow a demurrer; (4) the judge refused to arraign petitioner; (5) the judge imposed an excessive sentence and displayed irritation at petitioner during sentencing; and (6) the judge denied petitioner's motion for a certificate of probable cause for appeal.  (AP at 24-26.)

An independent review of the record is required to determine whether the state court's decision was objectively unreasonable.  Himes, 336 F.3d at 848.

There are two ways in which a petitioner may establish that he has been denied his constitutional right to a fair hearing before an impartial tribunal.  First, the proceedings and surrounding circumstances may demonstrate actual bias on the part of the adjudicator.  See

23

1  Taylor v. Hayes, 418 U.S. 488, 501-04 (1974).  In other cases, the adjudicator's pecuniary or

2  personal interest in the outcome of the proceedings may create an appearance of partiality that

3  violates due process, even without any showing of actual bias.  Gibson v. Berryhill, 411 U.S.

4  564, 578 (1973); see also Exxon Corp. v. Heinze, 32 F.3d 1399, 1403 (9th Cir. 1994) ("the

5  Constitution is concerned not only with actual bias but also with 'the appearance of justice'").

6  There is no evidence in this case that the trial judge had a personal or pecuniary interest in the

7  outcome of the proceedings involving petitioner.  Accordingly, the court will analyze whether the

8  circumstances of petitioner's case demonstrate actual bias on the part of the judge.

9         To succeed on his judicial bias claim, petitioner must "overcome a presumption of

10  honesty and integrity in those serving as adjudicators."  Withrow v. Larkin, 421 U.S. 35, 47

11  (1975); Crater v. Galaza, 491 F.3d 1119, 1131 (9th Cir. 2007).  Petitioner must also show that the

12  trial judge "prejudged, or reasonably appears to have prejudged, an issue."  Kenneally v.

13  Lungren, 967 F.2d 329, 333 (9th Cir. 1992) (citation omitted).  Bias can "almost never" be

14  demonstrated solely on the basis of a judicial ruling.  Liteky v. United States, 510 U.S. 540, 555

15  (1994).  A judge's remarks or opinions will not demonstrate bias unless they "reveal such a high

16  degree of favoritism or antagonism as to make fair judgment impossible."  Id.  On habeas review,

17  the applicable standard is a stringent one:  relief is warranted only if "the state trial judge's

18  behavior rendered the trial so fundamentally unfair as to violate federal due process under the

19  United States Constitution."  Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995).

20         Here, petitioner has failed to establish a due process violation resulting from

21  judicial bias.  There is no evidence the judge's rulings were the result of favoritism to the

22  prosecution or antagonism towards petitioner, or that the judge had prejudged any issue.  Indeed,

23  petitioner mischaracterizes some of the court's rulings.  For example, petitioner claims the judge

24  refused to allow a demurrer or to arraign petitioner.  Exhibits to petitioner's AP rebut these

25  claims.  (Dkt. No. 2, Exhibit Part III at 15-17; 19-24.)  Aside from the rulings themselves,

26  petitioner points to no evidence in the record indicating that the trial judge harbored any bias

against him.  Petitioner has failed to overcome the presumption of honesty and integrity on the part of the state court judges.

Petitioner also challenges some of the judge's comments as demonstrating bias. However, the instant case was complex, involving 43 counts in two separate counties, multiple victims, and complex financial transactions.  The judge's suggestion to defense counsel that petitioner plead guilty was justified based on the complexity of the case, and, considering the multiple charges petitioner faced, was arguably in petitioner's best interest.  The judge's irritation at sentencing (RT 64-65) does not demonstrate bias, but rather frustration with petitioner's attempt to back pedal from the agreement entered into, on the record, at the plea hearing.

> [J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . .  Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display.  A judge's ordinary efforts at courtroom administration--even a stern and short-tempered judge's ordinary efforts at courtroom administration–remain immune.

Liteky, 510 U.S. at 555-56 (1994).  The comments and irritation petitioner challenges fail to demonstrate judicial bias on this record.  In any event, petitioner has failed to demonstrate that the comments and/or the irritation rendered the trial so fundamentally unfair that it violated federal due process.  Duckett, 67 F.3d at 740.

Accordingly, petitioner is not entitled to habeas relief with respect to this claim.

F.  Claims Raised in the Traverse

Petitioner raises several new claims in the traverse.  For example, he claims malicious prosecution and prosecutorial misconduct by the prosecutor.  (Traverse at 8, 28.) To the extent petitioner is attempting to belatedly raise new claims in the traverse, relief should be denied.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (a traverse is not

the proper pleading to raise additional grounds for relief); Greenwood v. Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir. 1994) ("we review only issues which are argued specifically and distinctly in a party's opening brief").  Even if these claims had been properly raised, petitioner has failed to demonstrate a constitutional violation.

As explained above, because petitioner pled guilty, he has waived any claim of constitutional defect that does not relate directly to the knowing and voluntary nature of his plea. Tollett, 411 U.S. at 266-67.  None of the new claims raised in the traverse relate directly to the knowing and voluntary nature of his plea.  But even if such a claim had been properly raised, petitioner has failed to demonstrate a constitutional violation.

VI.  Conclusion

For all of the above reasons, the undersigned recommends that petitioner's application for a writ of habeas corpus be denied.

VII.  Evidentiary Hearing

Petitioner requests an evidentiary hearing with respect to his claims.  Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the following circumstances:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense[.]

28 U.S.C. § 2254(e)(2).

Under this statutory scheme, a district court presented with a request for an

26

1  evidentiary hearing must first determine whether a factual basis exists in the record to support a

2  petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." <u>Baja v.</u>

3  <u>Ducharme</u>, 187 F.3d 1075, 1078 (9th Cir. 1999); <u>see also</u> <u>Earp v. Ornoski</u>, 431 F.3d 1158, 1166

4  (9th Cir. 2005); <u>Insyxiengmay v. Morgan</u>, 403 F.3d 657, 669-70 (9th Cir. 2005).  A petitioner

5  requesting an evidentiary hearing must also demonstrate that he has a "colorable claim for relief."

6  <u>Earp</u>, 431 F.3d at 1167 (citations omitted).  To show that a claim is "colorable," a petitioner is

7  "required to allege specific facts which, if true, would entitle him to relief." <u>Ortiz v. Stewart</u>, 149

8  F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted).

9         The court concludes that no additional factual supplementation is necessary and

10  that an evidentiary hearing is not appropriate with respect to the claims raised in the instant

11  amended petition.  The facts alleged in support of these claims, even if established at a hearing,

12  would not entitle petitioner to relief.  Therefore, petitioner's request for an evidentiary hearing

13  will be denied.

14  VIII.  <u>Expansion of the Record</u>

15         Petitioner contends that the evidentiary hearing will "produce additional

16  documents, transcripts, search warrants/affidavits and other pertinent documents." (Dkt. No. 51

17  at 2.)  Respondent points out that petitioner has failed to specifically identify the documents

18  petitioner seeks to admit, or how those documents support his petition.  (Dkt. No. 55 at 8.)  In

19  any event, respondent argues petitioner has failed to demonstrate "both diligence in developing

20  the factual basis in state court and relevancy of the evidence of his claim." (<u>Id</u>.)

21         "Rule 7 of the Rules Governing § 2254 cases allows the district court to expand

22  the record without holding an evidentiary hearing." <u>Cooper-Smith v. Palmateer</u>, 397 F.3d 1236,

23  1241 (9th Cir. 2005) (citation omitted).  "However, before the record may be supplemented with

24  new evidence, a petitioner must meet the same standard that is required for an evidentiary

25  hearing.  In order to be awarded an evidentiary hearing, a petitioner must either:  (1) satisfy the

26  requirements of 28 U.S.C. § 2254(e), or (2) show that he 'exercised diligence in his efforts to

1  develop the factual basis of his claims in state court proceedings.'" Libberton v. Ryan, 583 F.3d

2  1147, 1165 (9th Cir. 2009) (citations omitted); see also Holland v. Jackson, 542 U.S. 649, 652-53

3  (2004).

4          Here, petitioner has not satisfied the requirements of 28 U.S.C. § 2254(e), nor

5  shown diligence in his efforts to develop the factual basis of his claims in state court.  Thus,

6  petitioner's motion to expand the record will be denied.

7  IX.  Motion for Summary Judgment

8          Petitioner's motion for summary judgment is improper and moot.  The court has

9  considered the merits of his claims, and the reiterations of claims or arguments offering

10  additional arguments is not persuasive.  Because the court recommends denial of the petition on

11  its merits, the motion for summary judgment should be denied as moot.

12          Accordingly, IT IS HEREBY ORDERED that:

13          1.  James A. Yates is substituted as respondent herein.  The Clerk of Court is

14  directed to change the docket accordingly

15          2.  Petitioner's October 13, 2009 motion for expansion of the record (Dkt. No. 51)

16  is denied;

17          3.  Petitioner's October 13, 2009 motion for evidentiary hearing (Dkt. No. 53) is

18  denied.

19          For the foregoing reason, IT IS HEREBY RECOMMENDED that:

20          1.  Petitioner's October 13, 2009 motion for summary judgment (Dkt. No. 54) be

21  denied; and

22          2.  Petitioner's application for a writ of habeas corpus be denied.

23          If petitioner files objections, he shall also address whether a certificate of

24  appealability should issue and, if so, why and as to which issues.  A certificate of appealability

25  may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the

26  denial of a constitutional right."  28 U.S.C. § 2253(c)(3).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 23, 2010

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

erb2601.157